# In the United States District Court
## for the Southern District of Georgia
### Brunswick Division

PATRICIA D. WYNN,                :            CIVIL ACTION

     Plaintiff,               :

       v.                  :

PARAGON SYSTEMS, INC.,           :

     Defendant.               :            NO. CV203-019


## O R D E R

Plaintiff, Patricia D. Wynn, filed the captioned case against Defendant, Paragon Systems, Inc. ("Paragon"), on January 28, 2003. Wynn sued Paragon for discrimination based on sex and retaliation, in violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17. ("Title VII").

Presently before the Court is Defendant's motion for summary judgment. After summarizing the facts of the case, the Court will review Defendant's motion and brief, along with Wynn's responsive brief, and all the supporting documents in

AO 72A
(Rev. 8/82)

3\

the record, to determine that Defendant's motion will be **GRANTED**.

## BACKGROUND

Paragon is a security management company providing law enforcement services, surveillance, identification and authorization checks, and perimeter, building, and vehicle security checks for the Federal Law Enforcement Training Center ("FLETC") in Brunswick, Georgia. FLETC operates as a training facility for law enforcement personnel of numerous federal agencies. Paragon has held a government contract to provide security services to FLETC since October 1, 2000. At FLETC, Paragon operates three continuous shifts, twenty-four hours a day, seven days a week. Under its contract with the government, Paragon is required to employ a Project Manager, Assistant Project Manager, and three Safety Officers. The Project Manager supervises all security personnel. Paragon's security personnel must carry pistols while on duty. Security personnel include Shift Supervisors, or "Sergeants," and security officers. Sergeants supervise security officers assigned to their shift. Paragon has three full-time Shift Supervisors. During the relevant time period, Jason Wilkes

2

was the Project Manager, and the Shift Supervisors were Sergeants Wynn, Robinson, and Saddler.

At FLETC, Paragon communicates with its employees on a daily basis using a "Pass Down Log" ("PDL"). The PDL consists of a series of memoranda giving instructions from management to security personnel. It contains information about specific Paragon policies and procedures. Shift Supervisors are responsible for reading any new entries in the PDL at the beginning of each shift to the officers they supervise, and enforcing the rules set out in the PDL.

Any Paragon employee may issue a "Statement." A Statement describes a workplace incident, and may be used to support disciplinary action by the company. Only the Project Manager is authorized to discipline employees.

When Paragon obtained the government contract at FLETC, it hired Wynn as the Night Shift Supervisor. For the ten years prior to Paragon's obtaining the FLETC contract, Wynn served as a security officer and supervisor for two other security contractors at FLETC. Wynn served as Paragon's Night Shift Supervisor until June 1, 2001, in total, a period of eight months. During Wynn's employ, John Robinson was the Day Shift Supervisor, and Sergeant Saddler was the Evening Shift

3

Supervisor.  Robinson was also a Paragon Safety Officer, which required additional responsibilities regarding workplace safety.

At 8:00 A.M., on April 20, 2001, Project Manager Wilkes held a Sergeants' meeting, immediately following Plaintiff's shift.  Wynn and Robinson attended, but Saddler was not required to attend.  Instead, Saddler was given a handout the night before, describing the purpose of the meeting.  Saddler was excused from attending the meeting because he held another job.  Wynn complained to Wilkes that she was required to attend the meeting, while Saddler was not.

On April 10, 2001, Paragon issued a Gun Clearing Procedure PDL.  On April 22, 2001, Richie Jones, a male Paragon security officer, violated this policy, and Wilkes disciplined him.  On April 24, 2001, Paragon issued another PDL indicating that all security personnel must have a co-worker observe the loading and unloading of their weapons.  On May 7, 2001, Robinson reported Wynn for violating this latter Gun Clearing Procedure PDL.  On that day, following her normal shift, Wynn unloaded her gun without a co-worker present.  Robinson, in an adjoining area, observed and heard the circumstances surrounding the violation and issued a

4

Statement. Wynn admitted that she violated the procedures, but complained that Robinson's reporting of the incident was harassing and disrespectful. Wynn believed that Robinson was monitoring her activities more closely than he monitored the officers he was responsible for supervising. Wilkes disciplined Wynn for her violation, issuing a written reprimand. This was the only time Paragon disciplined Wynn.

Wynn and Robinson had difficulty getting along during most of Plaintiff's employment with Paragon. Paragon had another PDL explaining that the security vehicles had to be turned over to the next shift in a clean and serviceable manner ("Shift Turnover Protocol"). Paragon issued Shift Turnover Protocols related to vehicle cleanliness on February 21, 2001, April 9, 2001, and April 20, 2001. When the vehicles were turned over to the next shift, all trash was to be removed and the floor mats were to be taken out of the car to shake off any loose dirt that may have accumulated during the previous shift. Because Robinson's shift followed Wynn's, they had regular altercations about the cleanliness of the vehicles that Wynn turned over to Robinson. Wynn testified that she and Robinson would regularly get into yelling altercations regarding the vehicles' cleanliness. According

5

to Wynn, these incidents lasted ten to fifteen minutes each, and occurred two or three times per week, from February through May of 2001.

On May 11, 2001, Wynn complained to Wilkes about her disputes with Robinson concerning the Shift Turnover Protocol and the gun clearing incident. Wilkes explained that all Shift Supervisors were required by company policy to turn over clean vehicles on change of shift, and that Robinson, as a Safety Officer, was required to report all safety violations. On May 16, 2001, Wynn requested that Wilkes demote her to the Day Shift Gate 4 Officer position, knowing that Robinson supervised that shift. Wilkes asked her why she would request a demotion to this position. Wynn's explanation did not clearly address why she would ask to work under the direct supervision of a co-worker with whom she had admitted personality conflicts. Following this discussion, Wynn requested a meeting with Charlie Allbritten, Paragon's Director of Security Operations.

Wynn met with Allbritten on May 30, 2001. Wynn accused Robinson of harassing her during this meeting, citing Robinson's demand that Wynn clean the vehicle floor mats at the end of her shift, and his act of reporting her violation

6

of the Gun Clearing Procedure PDL. Wynn again requested a demotion to the Gate 4 Officer position. When Allbritten asked for an explanation, she stated that she wanted to apply for that position because of the emotional stress she was under in her current position. Allbritten asked Wynn why she would want to work directly under the person whom she felt was harassing her. Again, her explanation was not clear: she stated that although she had never worked a day shift at the gate, she believed that Robinson did not supervise employees under his authority at the gate closely. Allbritten informed Wynn that Paragon would consider demoting her if she were having trouble handling her responsibilities as a Shift Supervisor, but would not demote her for the reasons that she had stated.

Wynn also claims that discrimination occurred when Paragon Assistant Project Manager Adam Austin rejected her requested vacation dates. This May 29, 2001, request for time off from June 15-24, 2001, was rejected because two other security personnel would be off at that time. Wynn was told to choose vacation days that were not already full.

Plaintiff also alleges that she attempted to speak with Allbritten about her problems with Robinson by phoning

7

Allbritten in April and May of 2001, but that Allbritten did not return Plaintiff's calls.  Plaintiff does not explain how this alleged failure to return her phone calls or meet with her until May 30, 2001, constituted discrimination against her.

On May 31, 2001, after seeing her name on the work schedule still as a Shift Supervisor, Plaintiff decided to resign.  On June 1, 2001, Wynn tendered a letter of resignation to Paragon, effective June 15, 2001.  Paragon decided not to allow her to work out her requested notice period, and instead determined that the termination of employment should take effect immediately.  However, Paragon did pay Wynn through June 10, 2001.  Wynn asserts that Paragon's decision to not allow her to work out this two week notice period constituted an unjust termination, in retaliation for her complaints about Robinson.

In September 2001, Wynn filed a charge of discrimination against Paragon with the EEOC.  In her charge, she alleged that Paragon discriminated against her based on her sex and in retaliation for statutorily protected activity.

On January 28, 2003, Wynn filed the present action.  Wynn sued for sex discrimination, retaliation, negligent hiring and

8

retention, negligent failure to train and supervise,[1] and attorney's fees.   On October 21, 2003, Wynn voluntarily dismissed her negligent hiring claim.   The claims before the Court on Paragon's motion for summary judgment, then, are the Title VII discrimination claims based on sex and retaliation, and the derivative state law tort claim for negligent retention of Robinson after it had knowledge of Wynn's complaints against him.

Having set forth the facts and procedural history of the case, the Court will now address the application of those facts to the law.   The Court will begin by setting forth the standard for granting a motion for summary judgment.

## DISCUSSION

### I.   THE SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to

---

[1]

In her brief in opposition to Defendant's motion for summary judgment, Plaintiff asserts that she "has not raised a negligent training or supervision claim."   Plaintiff's Brief 1.   However, Count IV of Plaintiff's complaint, paragraphs thirty-one through thirty-four, sets out Plaintiff's allegation that Paragon negligently failed to train and supervise its management personnel on the subject of Title VII regulations.   The Court understands Plaintiff's assertion in her brief as a desire to abandon Count IV of her complaint. As a result, the Court will **DISMISS** this Count.

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor . . . ." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal quotation marks omitted). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). At the summary judgment stage, the Court may not weigh the evidence or make credibility determinations. Chapman v. American Cyanamid Co., 861 F.2d 1515 (11th Cir. 1988).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

10

How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). If the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by either (1) negating an essential element of the non-movant's case or (2) by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (discussing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. Again, how to carry this burden depends on

11

who bears the burden of proof at trial.   If the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden.   If the movant shows an absence of evidence on a material fact, the non-movant must show either that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."   Fitzpatrick, 2 F.3d at 1116-17.   The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.   See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).   Rather, the non-movant must respond by affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

The Court will now address Wynn's claims of discrimination under Title VII, beginning with Wynn's claim of sex discrimination.   In the next section, the Court will focus first on the applicable law in Title VII sex discrimination cases.   The Court will then treat Wynn's assertion that Robinson's actions amounted to creating a hostile work environment.   Next, it will address Wynn's other allegations

12

of sex discrimination by Paragon.  In Section III, the Court will resolve Wynn's claim of retaliation under Title VII. Finally, in Section IV, the Court will discuss Wynn's state law negligent retention claim.

## II.  WYNN'S SEX DISCRIMINATION CLAIM UNDER TITLE VII

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).

Because Wynn relies on circumstantial evidence of discrimination, the burden shifting approach of McDonnell Douglas is applicable.  In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court explained

> the basic allocation of burdens and order of
> presentation of proof in a Title VII case alleging
> discriminatory treatment.  First, the plaintiff has
> the burden of proving by the preponderance of the
> evidence a prima facie case of discrimination.
> Second, if the plaintiff succeeds in proving the
> prima facie case, the burden shifts to the defendant
> 'to articulate some legitimate, nondiscriminatory
> reason for the employee's rejection.'  Third, should
> the defendant carry this burden, the plaintiff must
> then have an opportunity to prove by a preponderance
> of the evidence that the legitimate reasons offered

13

by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)(internal citations omitted). In the instant case, the Court need only to address the first stage; i.e., whether Wynn can prove a prima facie case of sex discrimination.

A prima facie case of disparate treatment sex discrimination involves proving four elements. The plaintiff must show that (1) she is a member of a protected class, (2) she was subjected to adverse employment action, (3) she was qualified to do the job, and (4) her employer treated similarly situated employees outside the protected class more favorably. Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). There is no dispute that Wynn is a member of a protected class or regarding her qualifications. Rather, the dispute centers on whether Wynn was subjected to any adverse employment action and whether similarly situated males at Paragon received better treatment than Wynn.

The term "adverse employment action" is "broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands." Boothe v. Henderson, 31 F. Supp. 2d 988, 996 (S.D. Ga. 1998). However the employer's alleged actions must

14

meet a "threshold level of substantiality . . . to be cognizable." Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998). A case-by-case review is necessary to determine whether an employer's conduct rises to the level of constituting an adverse employment action. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

> In this Circuit, an employee must show a serious and material change in the terms, conditions, or privileges of employment, and the employee's subjective view of the significance of the employer's action is not controlling; rather, the employment action must be materially adverse to a reasonable person under the circumstances.

MacLean v. City of St. Petersburg, 194 F. Supp. 2d 1290, 1298 (M.D. Fla. 2002)(citing Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001)).

"Title VII[] is neither 'a general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.' " Gupta, 212 F.3d at 587 (quoting Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999)).

Plaintiff alleges that Paragon took adverse employment action against her on several separate occasions. The heart of her claim, however, focuses on what she describes as "verbal assaults" from her co-worker, John Robinson. In addition to this hostile work environment claim, she alleges

15

that Paragon's refusal to demote her was based on animus directed at her because she is female. Additionally, Wynn has made tangential accusations that other actions by Paragon constituted workplace discrimination based on her sex. Although she does not argue these points in her brief as supporting her claim of sex discrimination, for the sake of completeness, the Court will address these allegations of conduct allegedly motivated by sex discrimination as well: Wynn received a written reprimand for her violation of the Gun Clearing Protocol PDL; in response to her complaints about Robinson, her supervisors verbally reinforced the company's policy regarding cleaning the security vehicles upon completion of a shift; and Wynn was required to attend a Sergeants' meeting immediately after her shift that a male employee was excused from attending. With these several allegations in mind, the Court will focus first on Wynn's complaints regarding her frequent disputes with Robinson.

To establish a claim of discrimination based on a hostile work environment, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

16

abusive working environment.'" Harris v. Forklift Sys., Inc.,
510 U.S. 17, 521 (1993). The factors to consider are "the
frequency of the discriminatory conduct; its severity;
whether it is physically threatening or humiliating, or a mere
offensive utterance; and whether it unreasonably interferes
with an employee's work performance." Id. at 523.

Plaintiff alleges that she engaged in mutual yelling
altercations with Robinson, from February through May of 2001,
two to three times per week, for about ten to fifteen minutes
per occasion. These arguments were invariably about cleaning
trash out of the security vehicles and shaking loose dirt and
dust off the vehicles' floor mats. Wynn testified that she
did not remember if she told Paragon management that she
considered these arguments to be instigated by Robinson's
dislike of her based on the fact that she is a woman.
Instead, she testified that she found the fights generally
distressing and disrespectful.

Because Wynn has presented no evidence, including her own
testimony, that her sex was the motivating factor behind her
altercations with Robinson, the Court need not decide whether
her arguments with a co-worker about shaking dirt from a floor
mat are significantly severe or humiliating so as to rise to

17

the level of creating a hostile workplace.   The regular encounters with Robinson were no doubt subjectively frustrating to Wynn, and the Court does not doubt that she found the situation unpleasant.   However, she cannot sustain a Title VII case based on that harm.   As mentioned, the most important factor leading to this conclusion is the complete lack of evidence in the record that the hostility she experienced had anything to do with her sex.   Title VII does not outlaw all personal animosity in the workplace.   As the cases say, it is not a general civility code.   It was incumbent on Wynn to provide evidence of a bias based on her sex, if she could do so.   The Court is led to the conclusion that there is no genuine issue of material fact with respect to this point.   Thus, summary judgment is appropriate as to Plaintiff's claim based on a hostile work environment.

Wynn further asserts that she was denied her request for a demotion because of Paragon's anti-woman bias.   Likewise, this claim is insufficient as a matter of law.   An employer's failure to demote an employee does not qualify as an adverse employment action.   The case law indicates that the failure to promote an employee can qualify as an adverse employment action.   Wideman, 141 F.3d at 1456.   However, Plaintiff points

18

to no authority indicating the failure to demote can constitute an adverse employment action, nor is the Court aware of any case so holding. Instead, case law indicates that such a finding, in this case, would be an inappropriate reading of Title VII's protections. As discussed, the employer's action, or inaction, must significantly impact the employee's terms or conditions of employment. Judged using an objective standard, the action must be serious, and materially adverse. An individualized review of the employer's refusal to demote Wynn to a position under the direct supervision of a co-worker with whom she has had personality conflicts reveals that this circumstance does not qualify as an adverse employment action.

Finally, the Court can dispose of Wynn's additional complaints of unfair treatment based on her sex with minimal analysis. As for Wynn's claim that she was required to attend a meeting that Sergeant Saddler was excused from attending, this is a trifling complaint that does not come anywhere near constituting an adverse employment action. Being required to attend one short meeting does not seriously impact the terms, conditions, or privileges of her employment.

19

Likewise, Wynn's complaint that her supervisors verbally reinforced the Shift Turnover Protocol PDL when she complained about Robinson does not constitute any form of discipline that properly can be construed as adverse to her employment situation. Obviously, in the face of an employee's complaint, the employer may state and explain company policy. Such an explanation does not constitute discipline. Rather, the only instance of discipline meted out by Paragon to Wynn was relatively mild: she received a written reprimand for unloading her pistol outside the presence of one of her co-workers. Wynn admits to violating this policy, and there is uncontradicted evidence that Paragon has similarly disciplined male employees for failure to maintain proper gun safety. As in Davis, it is clear that Wynn did not "suffer any tangible consequence from this memo, in the form of a loss in pay or benefits or further discipline." 245 F.3d at 1240.

Wynn has offered no evidence demonstrating that similarly situated males escaped from punishment for Gun Clearing Protocol violations. Instead, Wynn apparently presumes that the lack of evidence that male co-workers were disciplined suffices to show that she was discriminated against on the basis of her sex. As Defendant notes, however, Plaintiff must

20

present evidence indicating that similarly situated males were treated differently than Wynn. See, e.g., Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)(a plaintiff cannot establish prima facie case of discrimination without identifying "employees [who] are involved in or accused of the same or similar conduct and are disciplined in different ways."). Thus, the discipline cannot constitute unlawful sex discrimination.

Plaintiff's many claims of adverse employment actions based on her sex must be rejected by the Court. Having shown no genuine issue of material fact relating to the dearth of evidence supporting Wynn's claims that she was discriminated based on her sex, summary judgment in Paragon's favor is appropriate. The Court will proceed to discuss Wynn's retaliation claim.

## III.   WYNN'S RETALIATION CLAIM UNDER TITLE VII

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a).

21

AO 72A
(Rev 8/82)

As above, because Wynn relies on circumstantial evidence of discrimination, the burden shifting approach of <u>McDonnell Douglas</u> is applicable.  Again, as above, the Court need only address <u>McDonnell Douglas</u>'s first stage, the employee's <u>prima facie</u> case, to resolve Paragon's motion for summary judgment.

To establish a <u>prima facie</u> case of retaliation under Title VII, the plaintiff must show that "(1) she engaged in statutorily protected expression;  (2) she suffered an adverse employment action;  and (3) the adverse action was casually related to the protected expression."  <u>Wideman</u>, 141 F.3d at 1454.

Wynn's allegations of retaliation are three-fold. Subsequent to complaining about Robinson to Paragon management, she alleges that she was denied a vacation request, she was not demoted to the Gate 4 Officer position under Robinson's supervision, and that she was unjustly terminated (after submitting her resignation giving the customary two weeks notice).  Wynn's claims of retaliation are without merit because she fails to meet either of the required substantive elements listed above (and, therefore, the causation element is irrelevant).

22

As a threshold matter that applies to each of Wynn's complaints of retaliation, the Court will first discuss whether Plaintiff's activity, complaining about Robinson, was protected by statute. Regarding this first element, the Court finds that Wynn did not oppose an unlawful employment practice, so she has not engaged in a statutorily protected activity. It is clear that Wynn complained about Robinson's behavior to both Wilkes and Allbritten: the record demonstrates that she thought he was disrespectful, harassing, and causing her stress in her current position. However, she testified that she could not recall telling either Wilkes or Allbritten that she thought that Robinson's antics were motivated by her sex. As a result, her complaint is not protected by Title VII.

Even assuming Plaintiff could establish that she engaged in statutorily protected activity, Wynn cannot demonstrate that any of Paragon's alleged retaliatory conduct qualified as an adverse employment action. A one-time denial of Wynn's vacation request does not qualify as a serious and materially adverse change in the terms and conditions of her employment.[2]

---

[2]

Applying the McDonnell Douglas framework, even if the request for vacation were deemed an adverse employment action, Plaintiff has (continued...)

23

As explained above, applying the required individualized inquiry, the failure to demote Wynn to a position supervised by Robinson does not constitute an adverse employment action.

Obviously, firing an employee is the ultimate adverse employment action. However, because Wynn voluntarily terminated the employment relationship, she cannot show that she suffered an adverse employment action in this instance. Wynn submitted her resignation on June 1, 2001, to be effective June 15, 2001. The customary two weeks notice period is a traditional courtesy the employee extends to the employer. Here, Paragon informed Wynn that it did not need Wynn to serve out this two week period. Instead, it directed her to turn over the employer's property on the day she resigned.

Nonetheless, Paragon provided Wynn with severance pay by compensating her with her normal wages through June 10, 2001. Paragon's decision to reject Wynn's offer to work through a two week notice period does not constitute an adverse employment action. See Curby v. Solutia, Inc., 351 F.3d 868,

---

[2](...continued)
presented no evidence that the employer's rationale for denying this benefit — that others were going to be on leave at the same time — as pretextual. Thus, summary judgment would be proper on this basis as well.

24

871-72 (8th Cir. 2003); MacLean, 194 F. Supp. 2d at 1303 (courts use the same analytical framework in Family and Medical Leave Act cases as is used in Title VII cases, see Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1283 (11th Cir. 1999)).

Therefore, Wynn has not established that she engaged in statutorily protected expression or that she suffered any adverse employment action. Having shown no genuine issue of material fact, summary judgment in Paragon's favor is appropriate. The Court will proceed to discuss Wynn's state law tort claim for negligent retention.

## IV.   WYNN'S NEGLIGENT RETENTION CLAIM

The state courts have concurrent jurisdiction over civil actions brought under Title VII. Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 821 (1990). Under Georgia common law, a plaintiff may recover in tort from an employer for negligent retention of an employee if the employer knew or should have known that the employee was engaging in sexual harassment. Cox v. Brazo, 165 Ga. App. 888 (1983); Favors v. Alco Mfg. Co., 186 Ga. App. 480 (1988); Coleman v. Hous. Auth. of Americus, 191 Ga. App. 166 (1989). Although these cases were

25

based on state law, sexual harassment is conduct that would create the equivalent of a hostile work environment claim under Title VII. Id. at 167. Moreover, Coleman involved a claim of intentional infliction of emotional distress, albeit in the context of sexual harassment at the workplace. Wynn's allegations regarding Robinson's conduct creating a hostile work environment are analogous to a claim of intentional infliction of emotional distress.

Assuming, arguendo, the Georgia courts would extend the holdings of Cox, Favors, and Coleman to allow a plaintiff to recover for negligent retention of an employee when allegations of sex discrimination, not constituting sexual harassment, were present, Plaintiff still has not established a state tort claim. This is due to the fact that this cause of action is essentially derivative of the main action. Id. As discussed above, while Wynn clearly complained about Robinson's harassment and disrespectful treatment to her, she testified that she did not recall ever telling her supervisors that Robinson's conduct was motivated by her sex. Thus, the hostile work environment claim cannot proceed, and, as a result, neither can the state law claim based on negligent retention.

26

**CONCLUSION**

The Court has considered Defendant's motion and brief, and Plaintiff's responsive brief, along with all the supporting exhibits, affidavits, and other documents in the record.   For the reasons explained above, Count IV of Plaintiff's complaint is **DISMISSED**, and Defendant's motion for summary judgment, as to Plaintiff's Title VII claims based on sex discrimination and retaliation, and her state law negligent retention claim, is **GRANTED**.  See Doc. No. 18.   The Clerk is directed to enter judgment accordingly.

**SO ORDERED**, this _____23rd_____ day of January, 2004.

_____

JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

27

UNITED STATES DISTRICT COURT
Southern District of Georgia

Case Number:     2:03-cv-00019
Date Served:     January 26, 2004
Served By:       Sherry L. Taylor

Attorneys Served:

Michael L. Edwards, Esq.
R. Jason D'Cruz, Esq.

✓ Copy placed in Minutes

✓ Copy given to Judge

____ Copy given to Magistrate